UNITED STATES of America, Plaintiff,

v.

**WESTERN ELECTRIC COMPANY, INC., and American Telephone and Telegraph Company, Defendants.**

UNITED STATES of America, Plaintiff,

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.**

Civ. A. No. 82–0192.
Misc. No. 82–0025(PI).

United States District Court,
District of Columbia.

March 23, 1984.

James P. Denvir, Michael F. Altschul, Luin P. Fitch, J. Philip Sauntry, Jr., Richard Levine, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for plaintiff.

Howard J. Trienens, Jim G. Kilpatric, New York City, John D. Zeglis, Washington, D.C., Francine Berry, New York City, for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

AT & T has filed a motion to require Pacific Bell to grant it access to its lines for services originating from AT & T's coinless public telephones. The motion is opposed, among others, by Pacific Bell, the State of California, the California Public Utilities Commission, and GTE Sprint. It is supported by the Department of Justice and the Airport Operators Council International.[1]

I

Coinless public telephones have been in use for some time at locations such as airports, hotels, and truckstops. The Operating Companies themselves own "Charge-a-Call" coinless public telephones which can be used for credit card, collect, and other similar calls.[2] Interexchange carriers have recently begun to install their own coinless public telephones.[3] AT & T has installed such telephones in a number of places around the country,[4] but when it sought to install them in several locations in California,[5] Pacific Bell refused to provide the necessary access lines.[6]

It is AT & T's position that Pacific Bell is required by the decree to furnish it with the required access; Pacific Bell, on the other hand, claims that this is a matter over which the California Public Utilities Commission has jurisdiction, and that it will not provide the necessary access to AT & T

---

1. Other parties, *e.g.,* MCI and Tonka Tools, Inc. (a manufacturer of customer-provided pay telephone equipment), have taken intermediate positions.

2. Customers of interexchange carriers may make both intra-LATA and inter-LATA calls on these telephones.

3. GTE Sprint has such phones in twelve major airports; MCI operates coinless phones in the Washington National Airport and it has plans for additional installations on a nationwide basis.

4. All the Operating Companies except Pacific Bell appear to be providing the required access.

5. *E.g.,* at the Los Angeles airport, at a heavily-traveled truckstop, and at AT & T's own exhibit at the Los Angeles Olympic Games.

6. Pacific Bell has apparently also told the Los Angeles Olympic Organizing Committee that such telephones may be obtained at Olympic sites only from Pacific Bell.

unless it is instructed to do so by the Commission.[7]

## II

■ The decree requires[8] the Operating Companies to grant nondiscriminatory exchange access to all interexchange carriers.[9] That provision was designed to make it impossible for a "bottleneck" monopoly to prevent competitors from providing service by refusing to provide the necessary connections. If such an entity; *i.e.,* an Operating Company, had the authority to determine when it would or would not provide access and to whom, it would become the arbiter of future inter-LATA services; it could shape the inter-LATA competition to suit its needs or interests; and it could frustrate such competition altogether.[10] In short, it could act as the Bell System was alleged to have acted prior to divestiture.

Pacific Bell's assertions of authority to refuse to grant access to its lines to AT & T thus not only violate the decree; they strike at its heart. As will now be explained, the procedural and other defenses asserted by Pacific Bell and by others with respect to the extraordinary action of this Operating Company[11] are entirely unpersuasive.

Pacific Bell asserts that jurisdiction with respect to the coinless telephone issue lies with the California regulatory commission because that issue raises many public interest problems—problems which the California regulatory authorities are claimed to be in the best position to resolve. In fact, according to those supporting Pacific Bell,[12] this Court has recognized that disputes such as this should be decided, at least initially, by local regulators.

■ Congress determined by its enactment of the Sherman Act that the public interest lies in the removal of artificial restraints on competition, and that congressional direction was given content for purposes of this litigation by the decree which requires Pacific Bell to provide nondiscriminatory access. Under the Supremacy Clause[13] local jurisdictional and other interests must, of course, give way.

---

7. On February 8, 1983 Pacific Bell applied to the California Commission for such "instruction."

8. The decree also provides that the Operating Companies must

   file ... tariffs for the provision of exchange access, including the provision by each [Operating Company] of exchange access for AT & T's interexchange telecommunications.

   Appendix B, section B.1. Bell Pacific suggests that it has not filed such tariffs and does not propose to do so unless it receives a direction to that effect from the California regulatory authorities.

   It appears, contrary to the Pacific Bell contention, that AT & T has effective tariffs on file with the state commission for coinless telephones (which are not a new service but only a new access arrangement). Even if these tariffs did not encompass the access arrangements at issue, it would not assist Pacific Bell's argument, for that company would then be obligated under the decree to file the necessary tariffs. Indeed, the requirements of section B.1 are not met by the mere filing of tariffs but only by their implementation. See the Court's Opinion of December 1, 1983 at 3–4.

   The Court does not propose to permit an Operating Company, a state regulatory body, or both acting in tandem, to frustrate the terms and purposes of the decree by their actions or non-actions regarding tariff filings. If—unlike in the situation now before the Court—this were necessary to safeguard the bedrock purposes of the decree, the Court would be prepared to entertain applications for modifications pursuant to section VII to preclude interference with these purposes, by the manipulation of the tariff provisions or otherwise.

9. Section II–B. "Exchange access" is the "provision of exchange services for the purpose of originating or terminating interexchange telecommunications." Section IV–F. Contrary to Bell Pacific's argument that AT & T is requesting only a "mid-link" between its own facilities, the AT & T request clearly calls for exchange access within the meaning of the decree.

10. With respect to coinless telephones, AT & T will be in direct competition with Pacific Bell.

11. As indicated above, Pacific Bell seems to be the only Operating Company to have taken the position that it need not grant access to AT & T unless and until ordered to do so by its state regulatory body.

12. *E.g.,* California's Statement at 2–4.

13. U.S. Const., Art. VI cl. 2.

As concerns Pacific Bell's reliance on such doctrines as primary jurisdiction and the recognition that some controversies having both a regulatory and an antitrust dimension should be decided locally, it misconceives what is here involved. The instant controversy is not an inchoate dispute involving possible federal antitrust jurisdiction,[14] but it concerns a judgment already entered by a federal court.[15] Whatever may be appropriate in other circumstances, when, as here, a party is in violation of the terms of such a judgment, the Court would not be justified in deferring to a state regulatory body.

Substantively, too, the California public interest argument is not well taken. The refusal of bottleneck monopolies to provide the necessary connections potentially stifles competition, and for that reason alone it cannot be said to be in the public interest. As the Airport Operators Council International correctly points out, if Pacific Bell is not required to provide access, the result could be, *inter alia,* to emasculate the growth of competitive interexchange facilities at airports; to hold back the development of innovative long distance telephone facilities and service; and otherwise to deprive the public of benefits. Memorandum at 2.

It is contended by some that the proliferation of exclusive access telephones would be confusing to the public and would for that reason not be in the public interest.[16] There is no doubt that some find confusion in the mushrooming of service and equipment options that have become available in the wake of divestiture; others may regard such proliferation as healthy in that they give the consumer greater choice at potentially lower prices. In any event, that policy dispute, too, is resolved by the antitrust laws and the decree.

AT & T has claimed, without contradiction, that it plans to provide the public with new and improved features and conveniences, and that these will give consumers the ability, among others, to charge calls simply by the insertion of magnetically-encoded cards,[17] to use American Express cards for telephone charging purposes, and, if they are non-English speaking, to take advantage of multilingual instructions. MCI, among others, has been similarly forward-looking in its planning. Such innovation is in the public interest; it is the type of advance that the decree is designed to foster.

### III

Pacific Bell and those who support its position argue that the number of favorably situated locations for public telephones is limited; that companies other than AT & T may not be ready to install their own coinless telephones; that if these companies were ready, the several stations would quickly take up the limited space available at the high-density locations that are at issue here; and that Pacific Bell must therefore have the authority to decide not only when and for whom to allow interconnection but also to prohibit all intercon-

---

**14.** The Court's reference to preliminary factual and legal determinations by regulatory agencies was made long before the decree was entered, in fact, long before this case went to trial. *United States v. AT & T,* 461 F.Supp. 1314, 1321 (D.D.C.1978).

**15.** Pacific Bell's position is inconsistent not only with the decree entered herein under the antitrust laws but also with the Communications Act. The Federal Communications Commission has recently restated that it is a "fundamental goal" of the Commission "to foster a competitive market, open to all, for communications services and equipment." CC Docket No. 83–115, Phase I Memorandum Opinion and Order, Feb-

ruary 17, 1984, at ¶ 69. And the Department of Justice has stated that Operating Company "'censorship' of interexchange carrier offerings through carrier restrictions [as exemplified by the actions of Pacific Bell] also conflicts with fundamental policies of the Communications Act of 1934...." Reply of United States at 5.

**16.** Surprisingly, that statement is made by GTE Sprint (Opposition at 7) which in every other context has strongly urged upon the Court measures to promote the proliferation of services.

**17.** AT & T claims that it is in the process of distributing 47 million such cards.

nection except that which may be achieved through "universal" public terminals.[18]

Some of these contentions are based on premises which are unproved and other claims are likely to be erroneous. It is entirely unclear, for example, whether space at the vast Los Angeles Airport or the Olympic grounds is at such a premium that the several interexchange carriers could not all be accommodated. Similarly in error is the argument advanced by Pacific Bell and GTE Sprint that if AT & T receives access, it will "tie up" all available locations with its own stations. As AT & T points out, there are more than 1.5 million public telephones in place nationwide, all of them owned by the Operating Companies, and all of them available for service by and to any interexchange carrier. As for specific locations, the AT & T contracts are nonexclusive and may be terminated without penalty at any time upon sixty days' notice. AT & T Reply Memorandum at 6 n.*. Indeed, if anyone has an entrenched advantage and is likely to tie up the prime locations, it is Pacific Bell which already has public telephones, including Charge-a-Call telephones, in most of the locations.[19]

■ As for Pacific Bell's alternative claim—that AT & T should not be given access because others may not be ready with their own coinless telephones—it is without merit as a matter of law. To the extent that it appeared desirable to "hold back" AT & T because of its dominance in the interexchange and information markets, the decree contains provisions to accomplish just that.[20] State or local regulatory commissions do not have the authority to add to those restrictions on the basis of their own notions in that regard.

■ It may turn out ultimately that provision will have to be made in some locations, for space reasons or otherwise, to limit the number of coinless stations. If and when that contingency arises, remedies will readily be available to deal with this problem.[21] However, the issues regarding such remedies are not ripe for decision now. What is clear at this time is that Pacific Bell, which is bound by the decree,[22] must comply with its terms. It may not evade that responsibility by the expedient of seeking, awaiting, or relying on "instruction" from a regulatory commission, and no such body may issue orders or directions which would interfere with the decree. AT & T's motion will therefore be granted. The Court is this date issuing an appropriate order.[23]

---

18. Such terminals allow a customer to choose in one station from among several different interexchange carriers. It is not claimed, however, that the terminals could or would accommodate all carriers which might have an interest in the particular locations.

19. See also, note 10 *supra.*

20. Section VIII–D prohibits AT & T from entering the electronic publishing business for a period of seven years. Similarly, the existing Charge-a-Call assets were assigned to the Operating Companies rather than to AT & T at the Department of Justice's request, apparently at least in part so as not to afford AT & T an undue advantage.

21. For example, state authorities could adopt measures for the allocation of space along neutral, nondiscriminatory lines, and they could also regulate the placement and appearance of telephone stations. The telephone registration program adopted by the FCC likewise remains in force.

If it should seem with respect to a particular location or locations that a "universal" terminal is necessary or desirable in the public interest, there always remains the alternative of an application for a modification or waiver of the provisions of the decree.

However, contrary to the Department's suggestion, it appears doubtful that state regulators would have the authority to forbid particular carriers from providing coinless telephones (Reply of United States at 7), if only because such phones provide access for both intrastate and interstate calls.

22. Section III.

23. The Court denies AT & T's motion for an order requiring Pacific Bell to furnish a list of all persons to whom it has represented that it would not provide access for AT & T's coinless telephones. Such an order may be unduly burdensome in relation to the need.